|1SCHOTT, Chief Judge.
Defendant was indicted for the first degree murder of Hung Nguyen (hereinafter the victim) having had at the time the specific intent to kill or to inflict great bodily harm upon more than one person. (LSA-R.S. 14:30(A)(3)). He was convicted of second degree murder (R.S. 14:30.1) and was sentenced to life imprisonment.
At about 8:30 p.m. on July 5, 1992, the victim who was a Vietnamese teenager was a passenger along with other Vietnamese teenagers in an automobile driven by Huy Cao. The decedent was on the right of the back seat. To his left were Quan Tran, Thanh Tran and Vu Tran. Seated in the front passenger seat was another Hung Nguyen. Huy Cao pulled into a service station on the Chef Menteur Highway, and, after purchasing gasoline, he began to pull away. In the meantime a group of Vietnamese teenagers approached the car. One of them pulled a gun from his waistband and fired a volley of shots into the rear passenger seat, killing the victim and wounding the three Trans.
The issue in the case was identification of the defendant as the person who fired the shots. Hung Nguyen, the front seat passenger, Thahn Tran, and Quan Tran identified him. Defendant testified that he was not the assailant and |2that he was on his way to New Jersey at the time of the offense. His testimony as to alibi was corroborated by that of three witnesses.
By his first assignment of error defendant contends he was deprived of a fair trial because of prosecutorial misconduct in the cross examination of the defendant and in closing argument.
The police investigation of this crime disclosed that the witness, Hung Nguyen, and his brother had previously accused defendant of killing their brother or a friend of theirs. Consequently, prior to the trial of the case defendant filed a motion in limine to prohibit the state from making “any mention or reference to any belief, rumor, or other suggestion that defendant may have been responsible for any other alleged death.” On the day of trial the motion was granted by the court without any recorded objection by the state in the following words: “The rumors about killing other people. That goes without saying. You can’t....”
At the end of the trial and when the prosecutor had almost completed his cross examination of the defendant who was the last witness to testify for the defense the following colloquies ensued:

FIRST COLLOQUY:

BY MR. McCULLOUGH:
Q: You say you knew Hung Nguyen who’s still alive today, right?
A: Yes.
Q: You never had any problems with Hung Nguyen, did you?
A: No
Q: Never had any arguments?'
A: No

|3SECOND COLLOQUY:

Q: Never any bad blood between you?
A: No
*825 BY MR. McCULLOUGH:
Q: Do you believe that any of the witnesses who testified in this trial have any motive to lie about you?
MR. KLEPPNER:
Objection, your Honor.
THE COURT:
He can ask about motive or bias.
THE WITNESS:
I didn’t think of any.
BY MR. McCULLOUGH:
Q: You can’t think of any that would?
A: I can’t.
Q: I’m sorry?
A: I said I can’t think of any motive why he want to lie.
Q: Besides the persons who you have seen testify here today who were in that car, Mr. Sistrunk testified. Do you remember that?
A: Yes
Q: Do you think he has any motive to lie?
A: No
Q: Do you think he has any basis against you?
A: No
Q: Have you ever met him?
A: No
Q: What about Mrs. Sistrunk? Does she have any motive against you?
|4A: No. I don’t think so.
Q: You don’t even know her, do you?
A: No
MR. McCULLOUGH:
That’s all, your Honor. Your Honor, there is one other question.
BY MR. McCULLOUGH:
Q: You just testified, did you not, that you don’t know of any witness who has any basis against you or any motive to testify against you, right?
A: Yes.
MR. McCULLOUGH:
That’s all. Thank you. I just wanted to make sure I understood.
When the jury retired defense counsel elaborated on his objection as follows:
Your Honor, the question that was asked to which I objected obviously opened the Pandora’s box that this Court had ordered closed.
THE COURT:
I sustained your objection.
MR. KLEPPNER:
I know that, your Honor, but I suspect and I believe that this jury is highly prejudiced with this. That’s the reason I filed the motion and the state knew that. Now, I have to move this Court for a mistrial.
THE COURT:
I’m going to deny the mistrial. I think your objection was sustained. There was no testimony as to any guns or the presence of guns and I don’t think the jury has been tainted by that.
In closing argument the prosecutor made the following statements without |5objection by defendant:
.... Examine the motivation, the motive, the biases the witnesses may have for lying. Let’s consider that for a moment.
Dung Tran took the stand and told you himself that none of those four young boys had a grudge against him, had a motive for lying. He himself admitted that_
* * * ⅜ * ⅜
He also said there was no bad blood between him and Hung. In fact, no problems at all. He couldn’t figure out why anybody would try to frame him. No problem, not only with Hung, there were no problems with Quan, no problems with Thanh. No problems with anybody in that car. So why would they try to frame him?
Defendant argues as follows: The state took unfair advantage of him by representing to the jury that he (the defendant) had no reason to believe that Hung Nguyen was biased against him. The prosecutor knew Hung was biased against defendant, but defendant could not testify about the reason for Hung’s bias because to do so would inflame the jury against him and would be in violation of the court’s pre-trial order.
Defendant also argues that the state’s wrongful depiction to the jury of Hung as an *826 unbiased witness also had the effect of strengthening an otherwise weak identification of defendant as the killer. This argument is based not merely on the fact that Hung himself was one of the three witnesses who identified defendant but also on the theory that the identifications of defendant by Thanh and Quan were manipulated and produced by Hung.
The strongest identification other than Hung’s was Thanh’s. He testified unequivocally on direct examination that he picked defendant in a photographic lineup conducted by the police and that defendant was the gunman. He stated that he recognized the defendant as someone he had known before the |6commission of the crime. On cross examination his testimony on the identification was weakened when he stated that he spoke to Hung before he picked the defendant’s picture from the lineup and was influenced by Hung in doing so. However, Detective Adams testified that he conducted the photographic lineup with Hung in March 1992, but Thanh and Quan were presented with an entirely different array of photographs over two months later when they were about to testify before the grand jury. It was on this occasion when both Thanh and Quan independently identified defendant as the assailant.
In his original testimony Quan said he had ducked down when the shooting started so he did not see the assailant and could not identify him. However, the state recalled him and he recanted his previous testimony. He now said he saw and identified the defendant as the shooter. Asked why he had given the previous false testimony he said he had received a call from the defendant in prison. An objection followed and Quan said nothing further about the phone call.
The question of whether the identifications by Thanh and Quan were unreliable because of Hung’s influence was for the jury to decide. The arguments of defendant in this court on this issue were available to him in the trial court and were apparently rejected by the jury. Nonetheless, the issue of identification was paramount in the case and three witnesses identified defendant as the perpetrator, one of whom was Hung Nguyen. Consequently, if the quoted questions and statements by the prosecutor constituted misconduct which unfairly buttressed Hung’s testimony defendant’s argument might have merit. However, we are not persuaded that there was any misconduct on the part of the prosecutor in the first place.
When Huy Cao, the driver, and Hung Nguyen were first interviewed by the police, they reported that the defendant had shot and killed a friend of theirs |7who was confined to a wheelchair at the time. This information came from the police report. When the police detained the defendant on the day he was arrested, a fight broke out between him and Tony Nguyen, the brother of Hung, the witness. When the two were separated, Tony told the police the defendant had also killed his brother. The death of the brother has never been prosecuted. Defendant argues that he was faced with the difficult choice of either allowing evidence to be admitted that Hung believed that the defendant killed his brother, thereby providing a motive for him to falsely identify the defendant, or excluding the evidence because it was evidence of another crime which would have inflamed the jury against him. Defendant filed a motion in limine seeking to exclude evidence of the other homicide, and the trial court granted it. Thus, on appeal, defendant .argues that the State should not have been able to question him as to whether the witnesses had a motive to lie, and that the State should not have been able to argue in its closing argument that no vengeful motive existed.
As a matter of trial strategy defendant filed the motion in limine. The trial court granted the motion, prohibiting any evidence of the other homicide. The State questioned the defendant if he knew of any reason that the witnesses might have for not telling the truth, and the defendant responded that he did not. No evidence of the other homicide was admitted, and therefore the ruling of the trial court granting the motion was respected. It does not appear that the State should have been hampered in its prosecution simply because the defendant’s behavior in other incidents may have been less than sterling. Just as the defendant was entitled to attack *827 the credibility of the State’s witnesses, the State had every right to establish that its witnesses were credible by questioning the defendant as to whether he knew of any reason that the witnesses would lie. In fact, the State’s strategy may well have backfired if the |8defendant had simply answered “Yes” when asked if Hung and the other witnesses had ulterior motives. It then would have been prevented from asking the defendant the next logical question “What were those motives?” because it may have elicited evir dence of the other crime. The jury would then have been left with the impression that the witnesses had motives that the State did not want to explore. The same applies to the statements of the prosecutor in closing argument.
While arguing that he was in a dilemma which caused him to exclude evidence of another crime to his detriment in being unable to impeach Hung’s testimony, defendant unfairly attempts to shift the responsibility for the dilemma to the state. It seems clear that the state could not have used this evidence that the defendant killed Hung’s brother even if it had wanted to and defendant had never filed his motion in limine. C.E. art. 404. Consequently, the order excluding the evidence was a superfluity. The heart of defendant’s argument is that the prosecutor used this order which was designed to protect the defendant as a weapon against him. The first weakness in this argument is that the exclusion of other crimes evidence operates against the state, not the defendant. Technically defendant was free to state exactly why he thought Hung was biased against him. But more importantly, since the order was superfluous the state agreed to nothing when it was issued. The motion in limine was nothing more than a ploy. If there had been no order at all and everything else was the same how would the prosecutor’s questions and statements quoted above constitute misconduct?
This assignment is without merit.
By his next assignment of error defendant argues that the State conducted improper voir dire when the prosecutor said the following:
|9You can honestly ask me, “Okay Bob, what is a reasonable doubt?” I can’t tell you. Neither can Mr. Kleppner. Neither can the judge, I expect, as learned as he is. Reasonable doubt is what forms in your mind. If you walk out at the close of the evidence in this case to your deliberations thinking he did it, that is beyond a reasonable doubt. If you walk out of here mto your deliberations, out of the evidence, thinking I don’t know if he did it, that’s a reasonable doubt.
The defense objected and the trial court stated: “The lawyers, while voir dire, are going to give you their appreciation of the law. If you are asked to sit here as a juror, at the end of trial, this court will instruct you on the applicable law based on the testimony given. Continue.” In the light of this statement by the court we fail to see how defendant was prejudiced by the prosecutor’s statement.
By his next assignment defendant argues the trial court admitted improper hearsay evidence. Specifically, the defense complains that Officer Tran should not have been able to testify as to what the witnesses told him when he spoke to them at the hospital. The defense objected to the testimony at trial. The State argued that the evidence was admissible under the excited utterance exception to the hearsay rule. The trial court overruled the objection on the basis that it was a report of a crime.
If the statements were inadmissible as impermissible hearsay, the error of admitting them was surely harmless. When hearsay is erroneously admitted, reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. State v. Wille, 559 So.2d 1321 (La.1990). Factors to be considered by the reviewing court include “the importance of the witness’s testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of* cross-examination otherwise permitted, and, of course, the overall strength of |10the prosecution’s case.” Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, *828 89 L.Ed.2d 674 (1986). Wille, 559 So.2d at 1333. In this ease, the only issue was identification of the perpetrator. In none of the statements taken by the officer was the defendant identified. The statements were simply cumulative of what all the witnesses said as to the occurrence of the crime as to which there was no evidence to the contrary.
This assignment is without merit.
By his last assignment defendant argues that the trial court should have admonished the jury or granted a mistrial after Quan Tran testified that he had received a phone call from the defendant in jail, and Vu Tran indicated that the defendant’s brother had called him. The defense argues that this evidence constituted impermissible evidence of witness intimidation. As to Vu Tran, the relevant interchange follows:
Q: Now, Vu, have you ever received a phone call from someone identifying himself as Dung Tran’s brother?
A: Yes
Q: What did he say to you?
The defense objected and the trial court sustained.
Q: Vu, do you have any fear about testifying?
The defense objected and the trial court ruled, “I’ll let it go. It goes to bias.”
A: No.
Q: Now if someone asked you “can you identify the shooter,” what would your response be?
A: No.
Q: The phone call, did you say anything?
The defense objected, and the trial court ruled, “No more phone calls, folks. That’s hearsay testimony, period.”
|11As such, all of the defense objections were sustained, and there was no evidence of any intimidation of Vu Tran.
As to Quan Tran, the relevant exchange occurred when Quan testified the second time and recanted his previous testimony:
Q: Yesterday, why did you say that was not him?
A: Two or three months ago, I receive a phone call from Dung Tran in prison. He....”
The defense objected and the trial court sustained the objection.
Here again, no evidence of intimidation of Quan Tran was admitted.
This assignment is without merit.
Accordingly, the conviction and sentence are affirmed.

AFFIRMED.